## TIPTON v. NORTH.

No. 28466.　May 31, 1939.

Rehearing Denied July 11, 1939.

Davis & Patterson and Earl A. Davis, for plaintiff in error.

Geo. C. Crump and H. W. Carver, for defendant in error.

CORN, J. This is an action instituted in the district court of Seminole county by the defendant in error, S. N. North, against the plaintiff in error, J. V. Tipton, and for the sake of convenience the parties will be hereafter referred to as plaintiff and defendant, as they appeared in the lower court.

The plaintiff filed petition seeking possession of the property involved in this action, and prayed for the cancellation of the lease contract under which the defendant held possession of the premises. The lease in question is as follows:

"This agreement, made and entered into this 20th day of February, 1933, by and between Ruby Hawkins, lessor, and J. V. Tipton, lessee,

"Witnesseth: For and in consideration of the mutual covenants and agreements hereinafter set forth, the said lessor hereby rents, leases and lets unto the said lessee the following described property, to wit:

"Lots 17 and 18, in Block 23 in the City of Wewoka, Seminole County, Oklahoma;

"To Have and to Hold the above-described premises unto the said lessee, his heirs and assigns, for a period commencing on the date hereof and ending on the 20th day of February, 1934.

"The said lessee hereby covenants and agrees to pay the said lessor as rental on the above described premises the sum of Thirty-Five Dollars ($35.00) per month for the first two months this lease is in force, said sum to be paid Thirty-Five Dollars ($35.00) on the date hereof and Thirty-Five Dollars ($35.00) on the 20th day of March, 1933, and on the 20th day of April, 1933, and on the 20th day of each succeeding month thereafter the said lessee agrees to pay the sum of Fifty Dollars ($50.00) as rental on said premises.

"It is further understood and agreed by and between the parties hereto that any additions or improvements attached to the above premises or placed in or on said premises by the said lessee shall be considered as personal property, and shall remain the property of the said lessee who shall have the right to remove the same from said premises upon the expiration of this lease.

"It is further understood and agreed by and between the parties hereto that in the event the said lessee shall deem it advisable at any time to release his rights under this lease and does in fact execute such release and surrender possession of the above property that the obligation to pay additional rent on said premises shall forthwith be canceled.

"It is further understood and agreed by and between the parties hereto that the said lessee shall have the option to renew this lease upon the expiration hereof under the same terms and conditions as are hereinabove set forth for an additional year upon giving the said lessee one month's notice of intention to renew said lease, and said option to renew under the same terms and conditions shall continue in force at the end of each year and the rental agreed to be paid hereunder is consideration for said option of renewal. * * *"

Thereafter plaintiff filed an amendment to his petition alleging that the above contract is in violation of the statute against perpetuities and void. The defendant filed his answer alleging that he occupied the premises in question under the above lease and alleging that all the terms and provisions of said lease with respect to notice of renewals and payment of rent had been complied with and that said lease was in full force and effect and not in violation of the statute against perpetuities.

Plaintiff filed reply to defendant's answer in the form of a general denial to all allegations inconsistent with plaintiff's petition.

The evidence discloses that on February

20, 1933, Ruby Hawkins, then owner of the premises involved in this action, executed the lease for the cancellation of which this action was brought, to the defendant, and thereafter defendant went into possession of the premises.

Prior to January 20, 1934, defendant notified his lessor of his intention to exercise the option of renewal contained in the lease, and thereafter defendant continued in possession of the premises and paid the rental provided for in the lease. Prior to January 20, 1935, defendant gave notice of his intention to renew his lease, and said premises were occupied by defendant under said contract for a third year, and said option of renewal was exercised by defendant as provided for in said lease prior to January 20, 1936, and occupancy of said premises was continued for a fourth term of one year and all rentals provided for in the lease were duly paid.

On March 23, 1936, defendant's lessor, Ruby Hawkins, conveyed the property in question to the plaintiff and authorized the defendant to attorn to the plaintiff. Plaintiff received from the defendant the rentals specified in said contract up to February 20, 1937. The lease under which defendant occupied said premises was properly recorded and defendant was in physical possession of the premises at the time plaintiff took his deed from defendant's lessor.

On January 18, 1937, defendant served notice on plaintiff of his intention to renew the lease for an additional year. On January 20, 1937, plaintiff notified defendant of his intention to terminate defendant's lease. Thereafter plaintiff refused to accept further rentals and filed this action for the cancellation of said defendant's lease.

Judgment was rendered on July 6, 1937, canceling the above lease contract, and plaintiff was decreed to be entitled to possession of the premises.

The findings of fact and conclusions of law made by the court are as follows:

"In this case the plaintiff sues the defendant, Tipton, and others, alleging that he is the owner of certain property in Wewoka, in the possession of the defendant, Tipton, under a certain lease contract made and entered into the 20th day of February, 1933, by and between the defendant, Tipton, and the then owner of said property, Ruby Hawkins.

"The plaintiff seeks to recover possession of said property and to terminate the alleged lease.

"The evidence discloses that a written agreement was entered into by and between Ruby Hawkins and J. V. Tipton, covering said property, under date of February 20, 1933, for one year. Said lease provides that

" 'Said lessee shall have the option to renew this lease upon the expiration hereof under the same terms and conditions as are hereinabove set forth for an additional year upon giving the said lessee one month's notice of intention to renew said lease.'

"And then further provides:

" 'Said option to renew under the same terms and conditions shall continue in force at the end of each year and the rental agreed to be paid hereunder is consideration for said option of renewal.'

"The defendant Tipton went into possession of the premises under said lease on the 20th day of February 1933, and at the end of said period gave notice of his intention to exercise his option for another year. The second year would expire February 20, 1935, but the defendant Tipton continued in possession and is still in possession, claiming the right to such possession by virtue of said lease.

"Prior to the expiration of the year which would end February 20, 1937, the plaintiff gave notice of his intention to terminate said lease, he having in the meantime and prior thereto become the owner of said property, and the defendant declined to give possession to the plaintiff, contending his right to hold from year to year so long as he saw fit to exercise his so-called option.

"The lease is made binding in the following language:

" 'To have and to hold the above-described premises unto the said lessee, his heirs and assigns, for a period commencing on the date hereof and ending on the 20th day of February, 1934.'

"But no provision is made in the lease that binds the successors of the lessor.

"It is the court's interpretation of this contract that as between the original owner of the property and the lessee, the lessee could have enforced a renewal of the lease at the end of the first year and might have been able to enforce the renewal of the second year's lease for another year, but no further than that. To hold that the lessee could force a renewal of this lease as against the owner and her successors in title from year to year for an indefinite period would be to create a perpetuity which the law does not favor, and the court is of the opinion that a renewal of this lease cannot be enforced as against the present owner for the year beginning February 20, 1937, and that the lease should be canceled and possession of the property decreed to the plaintiff. * * *"

The defendant in his brief states:

"The lease in question is not in violation of the statute against perpetuities.

"There have been no decisions by the Supreme Court of the state of Oklahoma on the question of the validity of leases containing a covenant which might be construed as a covenant for perpetual renewal and the decision of the court in this case will be important for the reason that it will lay down the law of this state on this question."

On the question of what is meant by the rule against perpetuities, we quote the following from 21 R. C. L. 287, sec. 9:

"* * * It may perhaps best be defined as a grant of property in which the vesting of future interests may be postponed beyond the period of time allowed by law for the creation of future estates, and in which the future grant cannot be destroyed by those having the immediate estate without the concurrence of those entitled to the future grant. Another definition is that a perpetuity is a limitation which takes property subject to it out of trade and commerce for a longer period of time than a life or lives in being and twenty-one years thereafter, and when necessary the period of gestation. The artificial use of the word has been explained by saying that such grants of property are called perpetuities, not because the grant as written would actually make them perpetual, but because they transgress the limits which the law has set in restraint of grants that tend to a perpetual suspense of the title, or of its vesting."

In Gray on Rule Against Perpetuities (2d Ed.) sec. 230, the author says that covenants for perpetual renewal are treated as an exception to the rule against perpetuities, but it is hardly necessary to create any exception to meet the case, the covenant to renew being a part of lessee's present interest.

We quote from 16 R. C. L. 887, sec. 391:

"The generally accepted view, however, is that a provision clearly giving the lessee and his assigns the right to perpetual renewals is valid in the absence of some statutory prohibition, and will be so construed and enforced by the courts."

The syllabus of the case Burns v. City of New York (N. Y.) 108 N. E. 77, is as follows:

"Covenants in a lease for continual renewals, while not favored, because tending to create a perpetuity, are valid and enforceable if explicit and clear.

"A covenant in a lease by a city for 21 years to renew it at its expiration for 21 years, 'with a like covenant for future renewals of the lease as is contained in this indenture,' is one for future renewals in perpetuity.

"Four renewals of a lease for 21 years are a practical construction of a covenant of the original lease, to be given great weight by a court, as one for future renewals in perpetuity."

In re Hubbell Trust (Iowa) 113 N. W. 512, contains the following:

"A lease for any number of years, whether for 99 or 999, is not in violation of the statute of perpetuities, for in neither is the lessor precluded thereby from disposing of it at will, nor the lessee hindered in selling or assigning the lease, and by uniting in a conveyance the lessor and lessee may freely and without restraint convey both the fee and the leasehold interest."

The syllabus of the case of Thaw v. Gaffney (W. Va.) 83 S. E. 983, is:

"A covenant permitting indefinite perpetuation of a lease does not violate the rule against perpetuities.

"A lease under seal, containing the following covenant by the lessor: 'The said parties of the second part are to have said land for the purpose of building thereon two dwelling houses, and to have and to hold said land for and during the term of five years, or as much longer thereafter as the parties of the second part may elect to pay the parties of the first part in the sum of fifty dollars ($50) per annum, to be paid semiannually in advance'—gives the lessee or his assignee the option to perpetuate the lease indefinitely by paying the stipulated annual rental in advance.

"A landlord's covenant to renew the lease at the end of the term, at the election of the lessee, is a binding obligation."

The reason a lease containing a covenant for perpetual renewal does not contravene the rule against perpetuities is that the covenant to renew constitutes a part of the lessee's present interest. An estate for years, with a perpetual covenant for renewal, is, so far as questions of remoteness are concerned, substantially a fee, and as such it should be regarded. (Gray on Perpetuities, sec. 30.)

It is obvious that a perpetual lease, or a lease containing a covenant for perpetual renewal, is not a restraint or limitation upon the power of alienation of the fee, for there are at all times persons in being who by joining can convey the fee.

Further in support of the proposition that a lease containing a covenant for perpetual renewal does not violate the rule against perpetuities, we cite the following cases: Atkinson v. Orr (Ga.) 9 S. E. 787; Henderson v. Virden Coal Co., 78 Ill. App. 437; Richmond v. Davis (Ind.) 3 N. E. 130; Todhunter v. Des Moines, I & M. R. Co. (Iowa) 12 N. W. 267; Hollander v. Central Metal

& Supply Co. (Md.) 71 Atl. 442; Drake v. Board of Education (Mo.) 106 S. W. 650; Blackmore v. Boardman, 28 Mo. 420; Hoff v. Royal Metal Furniture Co. (N. Y.) 103 N. Y. Supp. 371; Warner v. Tanner, 38 Ohio St. 118; Meyers v. Kingston Coal Co. (Pa.) 17 Atl. 891. Thompson on Real Property, 308, sec. 1127, says:

"* * * A covenant in a lease for the perpetual renewal thereof is valid. * * *"

The only authority found in the Oklahoma statutes relied upon by the plaintiff in support of his contention that the lease is invalid appears in article 2 of the Constitution, section 32, and reads as follows:

"Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed. * * *"

This section of the Constitution, in so far as it is applicable to leases such as this, has never been interpreted by this court.

A general covenant in a lease to renew for another term carries with it by implication an agreement to renew on the same terms and conditions as to all the essential parts of the lease, but it is generally held that in such cases the new lease shall not contain a covenant for an additional renewal and the covenant to renew is satisfied by a single renewal, unless the lease clearly shows that additional renewals were intended.

It is seen, by reference to the lease, that lessee is given an option to renew for an additional year on the same terms and conditions, and it is specifically stated that the option to renew under the same terms and conditions shall continue in force at the end of each year. This language is clear and unequivocal and unambiguous and the only meaning that can be given to the language employed is that the lessee shall have the right on one month's notice, at the end of each year the lease or a renewal thereof is in force, to renew for an additional year under the same terms and conditions as the property was held the previous year. It would be difficult to write a covenant for annual renewals more clearly and concisely and the provision in the lease cannot be subject to misinterpretation.

We find the following in Provine v. Wilson, 183 Okla. 77, 80 P.2d 291:

"A contract should receive such interpretation as will make it lawful and operative, if it can be done without violating the intention of the parties."

In construing provisions in a lease, relating to renewals, the usual rules for the interpretation of writings apply, and if there is any uncertainty, the tenant is favored rather than the landlord, because the latter, having the power to stipulate in his own favor, has omitted to do so, and also on the principle that every man's grant is to be taken most strongly against himself.

As authority for the above we cite the following cases: Butt v. Maier & Zobelein Brewery (Cal. App.) 92 P. 652; Swank v. St. Paul City Ry. Co. (Minn.) 75 N. W. 594; and Kaufmann v. Liggett (Pa.) 58 Atl. 129.

The plaintiff occupied the premises under the original lease for one year and for three additional years under renewals, as provided for in the option to renew, and the conduct of the parties to the lease shows clearly that it was their intention that the lease should be so construed as to give the lessee the right of renewal for an indefinite period at the option of the lessee.

The case of Thaw v. Gaffney, above cited, involves a lease in which the covenant for renewal is not as clearly stated as is the covenant of renewal in the lease in this case, and the court held that the lease contained a covenant for perpetual renewal. The property was demised for a term of five years or as much longer thereafter as the lessee may elect to pay the lessor the sum of $50 per annum, to be paid semiannually in advance. Certainly this language does provide for perpetual renewals as clearly as does the language in the lease in question, yet the court held that the lessee might perpetuate the lease indefinitely by paying the stipulated rental in advance.

At the time the property in question was acquired by the plaintiff the defendant was in possession thereof and the defendant's lease was properly recorded and there is no question of notice to the plaintiff of defendant's interest in the property. The lease and the covenant for renewal was enforceable against the original lessor and against the plaintiff, who is the lessor's grantee. In Leppla v. Mackey (Minn.) 16 N. W. 470, it was held that covenants to renew a lease run with the land and are enforceable against a grantee or assignee of the reversion.

This proposition is so elementary that we give little space to argument thereon. If a landowner could place a burden or encumbrance on land and free the land from this encumbrance by executing a conveyance to a third party, many fraudulent transfers of such property could be made.

Judgment reversed, with directions to render judgment for the defendant.

BAYLESS, C. J., and RILEY, GIBSON, and HURST, JJ., concur. WELCH, V. C. J., and OSBORN, DAVISON, and DANNER, JJ., dissent.